UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LARRY WARREN,<br><br>Plaintiff,<br><br>v.<br><br>CENTURION HEALTH OF INDIANA, LLC,<br>MIGUEL FRANCO,<br>LISA HAMBLEN,<br><br>Defendants. | ) | No. 1:24-cv-02222-JRO-DML |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS**

Plaintiff Larry Warren alleges that Defendants Centurion Health of Indiana, LLC ("Centurion"), Dr. Miguel Franco, and Lisa Hamblen violated his Eighth Amendment rights by delaying treatment for dental pain at Pendleton Correctional Facility ("Pendleton"). Dkt. 2. The Defendants have moved for summary judgment. Finding that there is no dispute of material fact and that the Defendants are entitled to judgment as a matter of law, the motion for summary judgment, dkt. [92], is **GRANTED**.

The Court also **GRANTS** Warren's motion for leave to include legible copies of exhibits, dkt. [151], and **DENIES** his motion for sanctions, dkt. [137].

## I. MOTION FOR SANCTIONS

On May 29, 2026, Warren filed a motion for sanctions requesting that the Court order the Defendants to pay $7,500, strike the declarations that they designated in support of their motion for summary judgment, deny the motion

for summary judgment, and enter judgment in Warren's favor. Dkt. 137. Warren argues that the Defendants' motion for summary judgment shows that they engaged in "a deliberate calculated misrepresentation of facts." *Id.* at 3. And he identifies various aspects of Dr. Franco's and Hamblen's declarations that he finds suspicious and unfounded. The Defendants responded that sanctions are unwarranted because Warren has not provided any evidence that they acted in bad faith or willfully disobeyed a Court order. Dkt. 145. The Court agrees and therefore denies Warren's motion.

"District courts 'possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Fuery v. City of Chicago*, 900 F.3d 450, 452 (7th Cir. 2018) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)). To impose sanctions under the court's inherent authority, it "must find that the party to be sanctioned 'willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Vega v. Chicago v. Bd. of Ed.*, 109 F.4th 948, 956 (7th Cir. 2024) (quoting *Fuery*, 900 F.3d at 463). Before imposing sanctions, the court "must first make a finding that the sanctioned party engaged in bad faith to obstruct the judicial process or bring about the violation of a court order." *Id.* Any sanctions imposed "must be proportionate to the circumstances." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). Facts supporting the sanctions of dismissal or default judgment must

be proven by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016).

There is no evidence that the Defendants willfully abused the judicial process or litigated in bad faith. As the Defendants argue, Warren's examples evidencing bad faith are simply disagreements with the Defendants' version of events. They are not evidence that the Defendants fraudulently produced evidence.

Warren has also not supported his argument that the Defendants' declarations are sham affidavits that should be stricken from the record. *See Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 634 (7th Cir. 2024) ("The sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony."). Although Parties cannot use affidavits to conjure up disputes of material fact, "an affidavit can be excluded as a sham only where the witness has given clear answers to unambiguous questions." *Id.* "The sham-affidavit rule is simply inapplicable where the affidavit amplifies, rather than contradicts, evidence already in the record." *Id.*; *but cf.*, *Clark v. Takata Corp.*, 192 F.3d 750, 760 (7th Cir. 1999) (affirming decision to strike affidavit where the defendant originally testified that they did not recall cutting or removing a seatbelt and then testified that they did unlatch the seatbelt).

Here, the discrepancies between the Defendants' interrogatories and admissions and their declarations are not contradictions that conjure up disputes over material facts. For example, the fact that Dr. Franco responded in

an interrogatory that he did not recall personally calling Warren's dorm on February 13 does not contradict his declaration (or even the unsworn response to the HCRs).[1] Hamblen's answer to a request for admission that she "denies that she was aware that plaintiff was suffering pain and requested urgent care" does not contradict her testimony that, "through my role as an HSA at [Pendleton], I am familiar with the health care treatment provided to Warren." *See* dkt. 137 at 22. Being aware of Warren's medical treatment does not imply that she was aware of the factual basis for specific allegations in this case.

In sum, Warren has catalogued disputes of fact; he has not pointed to sworn statements that contradict prior sworn statements. The sham affidavit rule does not apply. Accordingly, the Court denies Warren's motion for sanctions, dkt. [137].

## II. MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility

---

[1] Similarly, Dr. Franco's answer to an interrogatory that he "does not independently recall all details of every time he interacted with or treated Warren," see dkt. 137 at 4, does not directly contradict any statement in Dr. Franco's declaration concerning the occurrence of a March 15 appointment.

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

**A. Factual Background**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Warren and draws all reasonable inferences his favor. *Khungar*, 985 F.3d at 572–73.

**1. The Parties**

The Plaintiff, Warren, is in an inmate in the custody of the Indiana Department of Correction ("IDOC"). During all relevant times, Warren was incarcerated at Pendleton.

The Defendant, Centurion, is the health services provider for the IDOC. *Id.* ¶ 4. It provides health services pursuant to the IDOC's policies, practices, processes, and procedures and subject to IDOC's approval. *Id.*

The Defendant, Dr. Franco, is a dentist who worked for a subcontractor of Centurion. Dkt. 93-2 ¶ 2–3. During all relevant times, Dr. Franco was the only dentist at Pendleton. *Id.* ¶ 6. Dr. Franco's dental assistant, not Dr. Franco himself, reviewed Healthcare Requests ("HCRs"), and only forwarded them to him to resolve any questions. *Id.* ¶ 7. Dr. Franco was generally not involved in or responsible for scheduling dental appointments. *Id.* ¶ 10.

The Defendant, Hamblen, is employed by Centurion as the Health Services Administrator ("HSA") at Pendleton. Dkt. 93-3 ¶ 2. Hamblen supervises the daily administrative operations of healthcare at Pendleton, including dentistry. *Id.* ¶ 5. She oversees the collection and processing of HCRs; she does not provide medical services, and she is not a nurse or physician. *Id.* ¶ 5–8. Once an HCR is submitted that seeks dental care, it is sorted and sent to the dental department to evaluate and respond to it. *Id.* ¶ 10. Hamblen generally is not involved in or responsible for scheduling inmates for dental appointments. *Id.* ¶ 11.

**2. Policies concerning missed appointments at Pendleton**

Pendleton has followed a long-standing unwritten process or policy of requiring patients to wait thirty days before scheduling a routine, non-emergency dental appointment if they missed their scheduled appointment without an excuse. Dkt. 93-2 ¶ 19. This policy applied only to routine, non-emergency requests and would not prevent a patient requiring emergency dental treatment

from obtaining such care. *Id.* ¶ 20. The policy was intended to manage the high volume of requests at Pendleton and to discourage patients from abusing the dental request process. *Id.* ¶ 21. The policy predated Centurion's contract with the IDOC. Dkt. 93-3 ¶ 22. Centurion did not direct or require its personnel to enforce the missed appointment process. *Id.*

**3. Warren's dental care at Pendleton in February and March of 2023**

On February 7, 2023, Warren submitted an HCR stating "I would like to be seen for my annual. I'm experiencing pain in several areas of my mouth to include but not limited to my gums and teeth." Dkt. 151-1 at 2, 5. Although not diagnosed at the time of Warren's initial request for an appointment, Dr. Franco testified that Warren had a cervical abrasion, which is a minor, routine dental issue where a small portion of the tooth wears out near the gum line as a result of mechanical wear, such as poor toothbrushing or using a toothbrush that is too hard. Dkt. 93-2 ¶¶ 12–13. This condition can create tooth or gum sensitivity and pain, but it is not an emergency unless accompanied by signs of infection such as facial swelling around the affected area. *Id.* ¶ 14. Though cervical abrasions do not require dental treatment, dentists can treat them by adding a filling to the affected tooth. *Id.* ¶ 15. This is an elective, non-emergency procedure. *Id.* Per Dr. Franco, both options are generally considered to be appropriate under the expected standard of care for dentists. *Id.*

Warren was scheduled for a dental appointment on February 13, but he did not show up. *Id.* ¶ 18; dkt. 93-1 at 39. The administrative note from dental assistant April Gaunt documenting the missed appointment stated, "[o]n the

callout for requested dental evaluation, NO SHOW. Housing CO was called prior to appointment in order to inform offender of appointment." Dkt. 93-1 at 39; dkt. 93-2 ¶¶ 16, 26. Warren was notified that he would need to wait 30 days if he wished to submit a new HCR. Dkt. 93-1 at 39. Warren's subsequent HCRs claim that he was not notified about the February 13 appointment. Dkt. 93-1 at 29, 32.

Warren submitted an HCR on February 17, 2023, stating "I need to be seen for my annual. I continue to be in pain in multiple parts of my mouth/teeth." Dkt. 93-1 at 30. On February 20, Dr. Franco responded that, because Warren was a "no show," he had to send an HCR on or after March 13. *Id.*

On February 25, Warren submitted another HCR, stating

> In HCR #403524 and #404159 I explained that I needed to be seen for my annual as I'm experiencing pain in my mouth. I have older bridges and caps that needed medical attention . . . there may be potential cavities . . . my pain is only increasing.

*Id.* at 29. The response on February 28 stated that Warren's HCR had previously been addressed. *Id.* It also noted that two other patients from K Dorm, where Warren resided, showed up to their appointments on February 13. *Id.* Last, Warren was requesting routine, non-urgent care, meaning that he would have to resubmit the HCR on or after March 13. *Id.*

Warren submitted a grievance on February 27, complaining about the 30-day policy for no shows and accusing Dr. Franco of retaliation, ignoring his pain, and violating Centurion's policies. Dkt. 128-1 at 18. Warren stated that he had

"older bridges and caps that needed treatment and [he] may have potential cavities." *Id.*

Warren submitted another HCR on March 3, which he labeled as "urgent." Dkt. 93-1 at 26. He stated that he had "pain in his teeth and gums." *Id.* On March 7, Dr. Franco responded that Warren had to resubmit his HCR 30 days after the initial missed appointment and that Warren was already receiving pain medications Meloxicam and Tylenol. *Id.*; *see also id.* at 7–8 (reflecting that a package of Tylenol (acetaminophen) was given to Warren on February 9, 2023), 4, 14, 18-22, 24 (reflecting active prescriptions for Meloxicam). Dr. Franco also wrote, "[i]f you have an infection causing swelling of the face, let us know ASAP." *Id.*; dkt. 93-2 ¶ 31. Warren claims that he never had an active prescription for Tylenol and he was not receiving Meloxicam in February, although it was prescribed. Dkt. 128-1 at 24–31. He received Meloxicam on January 5 and March 12. *Id.* at 31.

On March 10, Warren filed an HCR contesting that he failed to appear on February 13 and stating that he no longer had a prescription for pain medication and that he had to purchase Tylenol from commissary. Dkt. 93-1 at 32. Dr. Franco responded on March 28, restating that Warren failed to appear for his February 13 appointment even though others in his housing unit were able to appear. *Id.* Dr. Franco also noted that Warren had a prescription for Meloxicam until September 2023 and that inmates are supposed to purchase their own pain medications through the commissary "per policy." *Id.* Dr. Franco restated that swelling of the mouth and face can be signs of an infection requiring more urgent

dental attention. *Id.* Dr. Franco did not receive notice that Warren reported facial swelling or that his cervical abrasion became serious. Dkt. 93-2 ¶ 32.

On March 10, Warren also sent a request for interview to Hamblen, asking about the 30-day no show policy. *Id.* at 14. Hamblen responded, "[t]his is to allow for scheduling for other patients." *Id.*

On March 13, Warren received mental health care for the anxiety and frustration caused by the delay in scheduling the dental appointment. Dkt. 128-1 at 35, 38–39. Warren ordered Tylenol from commissary on March 14, but did not receive it until March 20. Dkt. 128-1 at 31.

Warren submitted an "incident report" on March 15, complaining about a visit with Dr. Franco that day. *Id.* at 33. It claims that Dr. Franco did nothing to help Warren's dental issues and Dr. Franco expressed anger that he filed grievances. *Id.* There is no record of Warren's dental appointment on March 15. Dr. Franco testified that he did not see or examine Warren any time between February 13 and March 28. Dkt. 93-2 ¶ 36.

On March 28, Warren was scheduled for dental care, but he did not show up. Dkt. 93-1 at 36. The notification indicates that a Signal 100 was called in Warren's dorm and that Warren was rescheduled. *Id.* On March 30, Dr. Franco saw Warren for a dental exam. *Id.* at 35. The medical record states,

> Previously evaluated for tooth #12 for a filling. Placed anesthetic septocaine 4% 1:100,000 epi 1.0 carpule, with highspeed HP and round bur, carefully roughened up the existing abfraction lesion on cervical of tooth #12 for improved bonding (incisal margin is on the existing crown), applied cavity conditioner for 10 seconds, rinsed and dried, placed Gi restorative Fuji IX on tooth

> #12 (B), finished contoured and finished restoration with hand instruments (did not use highspeed and' burs for finishing) . . . Patient dismissed in good condition; RTC S/C PRN.

*Id.*

Dr. Franco testified that he did not speak to Warren aggressively or threateningly and did not scold him or otherwise express displeasure with Warren for missing appointments. Dkt. 93-2 ¶ 41. When Dr. Franco treated Warren, he did not note signs that Warren's cervical abrasion was infected or otherwise serious, and treatment for Warren's cervical abrasion was not urgently or emergently necessary at that time. *Id.* ¶¶ 39–40; *see also* dkt. 93-1 at 35. Although Warren did not require a filling, Warren elected to take a more aggressive approach to his cervical abrasion and requested that Dr. Franco perform a dental procedure to place a filling to remediate the abrasion. Dkt. 93-2 ¶ 40.

**B. Discussion**

The Court's screening order allowed Warren to proceed with (1) Eighth Amendment claims against Dr. Franco, Hamblen, and Centurion based on allegations that they delayed medical care for his dental issues, including by enforcing the 30-day waiting period; (2) State law intentional infliction of emotional distress ("IIED") and medical negligence claims against the same Defendants based on the same allegations; and (3) First Amendment claims against Dr. Franco and Hamblen, based on allegations that they delayed dental

treatment in retaliation for Mr. Warren's grievances and medical requests. Dkt. 14 at 3.

Warren's response states that he wishes to withdraw his medical negligence claim. Dkt. 127 at 44. Therefore, the Court **grants** summary judgment to the Defendants on Warren's medical negligence claim and dismisses it without prejudice.

The Court discusses the remaining claims below.

**1. Eighth Amendment claims against Dr. Franco and Hamblen**

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Deliberate indifference requires more than negligence or even gross negligence. *Id.* at 825. Rather, Warren "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*,

836 F.3d 722, 728 (7th Cir. 2016). The Seventh Circuit has held that deliberate indifference can be inferred when the defendant renders a treatment decision that departs substantially from accepted professional judgment, refuses to take instructions from a specialist, knowingly persists in an ineffective treatment, or inexplicably delays medical treatment. *Id.* at 729–30. In cases involving delayed medical care, plaintiffs "must offer verifying medical evidence that shows that the *delay* was detrimental." *Barnes v. Wexford Health Sources, Inc.*, 177 F.4th 825, 834 (7th Cir. 2026) (citing *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007)).

The Defendants argue that no reasonable jury could find that Warren's dental condition was objectively serious or that the Defendants were subjectively aware of a serious risk to Warren's health and then consciously disregarded it by delaying dental treatment. Dkt. 94. Warren argues that the Defendants inexplicably enforced the 30-day policy to punish him, knowingly prolonging and exacerbating his pain. Dkt. 127. Because the Court agrees with the Defendants on the subjective element, it does not address the objective component of Warren's Eighth Amendment claim.

At the outset, no reasonable jury could find that Hamblen was personally responsible for allegedly depriving Warren of medical care. "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Here, there is no evidence that Hamblen was involved in

scheduling Warren's dental appointments or in enforcing the 30-day policy. Although Hamblen responded to Warren's request for interview from March 10 explaining the reasoning behind the 30-day rule, there is no evidence that she had any authority to enforce the rule. A prison official's mere knowledge of alleged misconduct does not make them personally responsible for the misconduct. *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc). Indeed, "inaction following receipt of a complaint about someone else's conduct is [insufficient]." *Estate of Miller by Chassie v. Marberry*, 847 F. 3d 425, 428 (7th Cir. 2017). There is simply no evidence that Hamblen had anything to do with delaying Warren's dental appointment. Therefore, the Court grants summary judgment for Hamblen on the Eighth Amendment claim.

Though Dr. Franco was personally involved in Warren's dental treatment, no reasonable jury could find that Dr. Franco displayed deliberate indifference toward Warren's dental condition. First, Warren's HCRs did not notify Dr. Franco that he was suffering from a serious condition that required immediate care. Warren asked for his routine, or "annual," dental appointment, citing pain in his gums and teeth. *See* dkt. 151-1 at 2, 5. The HCRs do not complain about conditions that would signal an acute issue, such as bleeding or swelling. Moreover, Warren did not classify his HCR as "urgent" until March 3. Dkt. 93-1 at 26. Even then, he complained about "older bridges and caps" and "potential cavities." No reasonable jury could find that cavities, even if they are painful, require emergency dental care because these are conditions that the majority of the population experiences and treats with routine, non-emergency care. Even

after Dr. Franco specifically asked Warren whether he was experiencing emergency symptoms such as swelling, Warren did not complain about swelling or provide any other indication that he required immediate dental care. Given the HCRs in the record, there is no factual basis for finding that Dr. Franco was subjectively aware of Warren's need for urgent treatment.

Furthermore, the fact that Dr. Franco did not prescribe additional Tylenol or ensure that Warren received his Meloxicam in March does not create a material dispute of fact. Warren's medical record showed that he had an active prescription for Meloxicam in February and March and that a nurse provided him with Tylenol on February 9, 2023—a mere four days before his initial appointment. *See* dkt. 93-1 at 4, 7–8, 14. The fact that Warren had to purchase additional Tylenol from commissary in March does not violate the Constitution. The Constitution does not require free medical care. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) (citing *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 (1983)). And, constitutionally adequate care does not require the total alleviation of pain. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."); *see Gebhart v. Wexford Med.*, 2020 WL 1821261, at *1 (N.D. Ind. Apr. 10, 2020) (dismissing Eighth Amendment claim where physician gave an inadequate supply of over-the-counter pain medication and plaintiff could purchase more from commissary).

In sum, the facts in the record would not allow a jury to conclude that Dr. Franco knew about a serious condition and then continued to delay treatment by enforcing the 30-day policy. *See Zaya v. Sood*, 836 F.3d 800, 804–05 (7th Cir. 2016) ("The requirement of subjective awareness stems from the Eighth Amendment's prohibition of cruel and unusual *punishment*; 'an *inadvertent* failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain.'") (quoting *Estelle*, 429 U.S. at 105) (emphasis in original).

Last, as seen above, because Warren's Eighth Amendment claim involves delayed medical treatment, he must provide evidence that the delay itself exacerbated his injury or caused unnecessary and prolonged pain. *Barnes*, 177 F.4th at 834; *see, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012) (plaintiff stated an Eighth Amendment claim because "even though [the four-day] delay [in treatment for plaintiff's infected gunshot wound] did not exacerbate [his] injury, he experienced prolonged, unnecessary pain as a result of a readily treatable condition"). Here, Warren has not produced any evidence that his dental condition worsened because of the delay or that he suffered immensely by waiting 30 days to receive a follow up appointment. Instead, the record shows that Warren had a routine dental condition that did not require emergency intervention and he had access to prescription and over-the-counter pain medication. Accordingly, the Court grants summary judgment for Dr. Franco on the Eighth Amendment claim.

**2. Eighth Amendment *Monell* claims against Centurion**

Private corporations acting under color of state law, such as Centurion, are treated as municipalities for purposes of section 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). To survive summary judgment on a *Monell* claim, Warren must first show he was deprived of a federal right. *Id.* Then, Warren must provide evidence showing that Centurion's actions plausibly deprived him of the right at issue. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Centurion cannot be held vicariously liable for its employees' conduct under the theory of respondeat superior. *Id.* Thus, Warren must show that Centurion, "either through an express policy or an implied policy of inaction, took deliberate action that was the moving force behind a constitutional injury." *Taylor v. Hughes*, 26 F. 4th 419, 435 (7th Cir. 2022) (quotation marks omitted).

In this case, Warren has not satisfied the first element of a *Monell* claim against Centurion. He has not shown that the practice at issue—the 30-day wait following a missed appointment—violated his Constitutional right. See *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495–96 (7th Cir. 2021) (affirming dismissal of a Monell claim where the evidence at summary judgment did not show that plaintiff's constitutional rights were violated). Additionally, Warren has not produced admissible evidence disputing the fact that the policy at issue was Pendleton's and not Centurion's. As seen above, Centurion cannot be held vicariously liable for its employees' conduct. Absent any evidence that Centurion

maintained a policy or practice that violated Warren's Eighth Amendment rights, the Court grants summary judgment to Centurion.

**3. First Amendment Claims Against Dr. Franco and Hamblen**

To succeed on his First Amendment retaliation claim, Warren must produce evidence showing that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the Defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If Defendants can make that showing, the burden shifts back to Warren to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Defendants do not dispute that Warren engaged in protected First Amendment activity by filing HCRs and grievances, so the Court focuses on the second and third elements. *See* dkt. 94 at 28–29.

As seen above, Hamblen was not personally involved in scheduling Warren or in enforcing the 30-day policy. This means there is no evidence that Hamblen did anything to deprive Warren in a way that would deter future First Amendment activity. Therefore, the Court grants summary to Hamblen on the First Amendment claim.

Regarding Dr. Franco, the Defendants argue that Warren has not produced evidence showing that he suffered a deprivation that would deter

future First Amendment activity. *Id.* at 29–30. Warren argues that the disputed March 15 appointment, where Dr. Franco allegedly berated him, would deter future First Amendment activity. Dkt. 127 at 39–40.

Whether allegedly retaliatory conduct "would likely deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff." *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020).

Although the parties dispute whether the March 15 appointment occurred and what Dr. Franco said and did during the appointment, this dispute is not material and thus, does not preclude summary judgment. For one, Warren has not designated any admissible evidence demonstrating what occurred at the March 15 appointment. He cites his grievances, which describe Dr. Franco as "angry" and "calling [him] a liar." Dkt. 128-1 at 33, 43, 46. The statements in Warren's grievances are hearsay, which cannot be used to defeat summary judgment. *See MMG Fin. Corp. v. Midwest Amusements Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment."). Additionally, Warren has not filed an affidavit or an unsworn statement that conforms to the requirements of U.S.C. § 1746 swearing to the occurrence of the appointment or the contents of Dr. Franco's communication with him.

Even assuming the March 15 appointment occurred as described by Warren in the incident report and grievances, a reasonable jury could not

conclude that being called a liar by an angry dentist once would deter a prisoner of ordinary firmness from future First Amendment activity. The Seventh Circuit has found that plaintiffs must provide evidence that the deprivation would deter "a *prisoner* of ordinary firmness" by showing that the deprivation had a "significant deterrent effect in the prison context." *Douglas*, 964 F.3d at 647–48 (a defendant's harboring of a grudge and the plaintiff's subjective discontent with his new prison employment did not suffice to show a deprivation in violation of the First Amendment); *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise[.]"). Here, Warren has not provided any evidence that being called a liar had a significant deterrent effect on his life within Pendleton.

Although deprivation of medical care could deter future First Amendment activity, there is no evidence that Warren was deprived of medical care due to his grievances. The record shows that the 30-day waiting policy was enforced for everyone at Pendleton who missed routine, non-emergency dental appointments. Therefore, Warren was not singled-out or treated differently because he filed grievances against the Defendants. Additionally, Dr. Franco was not notified that Warren had an emergency condition requiring immediate care, and Warren's medical records showed that he had access to pain medications or could purchase them from the commissary. Accordingly, the Court grants summary judgment to Dr. Franco on the First Amendment claim. **4. State Law IIED**

To succeed on an IIED claim, Warren must show that the Defendants "(1) engaged in 'extreme and outrageous' conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress." *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997) (quoting Restatement (Second) of Torts § 46 (1965)); *Bah v. Mac's Convenience Stores*, LLC, 37 N.E.3d 539, 549 (Ind. Ct. App. 2015). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fox v. Franciscan All., Inc.*, 204 N.E.3d 320, 329 (Ind. Ct. App. 2023). Proving the elements of an IIED claim is rigorous. *See J.H. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 19 N.E.3d 811, 819 (Ind. Ct. App. 2014) ("IIED is found where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind."). Indeed, even showing "malice" and tortious or criminal intent will not suffice to prove IIED. *Id.* "The intent to harm emotionally constitutes the basis of the tort." *Bd. of Trs. of Purdue Univ. v. Eisenstein*, 87 N.E.3d 481, 500 (Ind. Ct. App. 2017) (internal quotations and citation omitted).

Here, Warren has not produced evidence from which a reasonable jury could conclude that the Defendants engaged in extreme or outrageous conduct or that they intended to harm him emotionally. As seen above, the 30-day waiting policy was enforced uniformly at Pendleton for patients who did not show up for routine, non-emergency dental appointments, such as Warren's "annual" appointment. The record does not show that any Defendant knew Warren required emergency dental care and then deprived him of it by enforcing the

policy. Furthermore, no reasonable jury could conclude that the mere existence of the policy constituted extreme and outrageous conduct that transcends the bounds of decency. The policy served the penological purpose of dissuading inmates from abusing the HCR process at Pendleton given the limited resources. Furthermore, it is not uncommon to have to pay a penalty—in the form of waiting or actual payment—after missing a medical appointment.

Finally, although Warren designates evidence of his need to visit the mental health practitioner, there is no evidence that Warren was particularly susceptible to emotional distress, that any Defendant knew about his increased anxiety, or that they enforced the policy to harm Warren's mental health. Warren argues that the Defendants should have known that he was particularly susceptible to emotional distress because of his prescription to Prozac. Dkt. 127 at 42–43. Having a prescription to treat anxiety and depression, without more information about the reason for the prescription, does not demonstrate that Warren was particularly susceptible to emotional distress, much less that Defendants knew he was susceptible to emotional distress. In*Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (applying Illinois law) the Seventh Circuit upheld a jury verdict for a plaintiff's IIED claim because the defendant, as the arresting officer, "knew that as the mother of a recently murdered child and the wife of the man accused, [the plaintiff] was particularly susceptible to emotional distress." Here, there is no evidence that the Defendants knew that Warren was particularly susceptible to emotional distress related to his dental care. Accordingly, the Court grants summary judgment for Warren's IIED claim.

## III. CONCLUSION

The Defendants' motion for summary judgment, dkt. [92], is **GRANTED**.

The Court **GRANTS** Warren's motion for leave to include legible copies of exhibits, dkt. [151], and **DENIES** Warren's motion for sanctions, dkt. [137].

Final judgment shall issue by separate order.

**SO ORDERED.**

Date: 8/25/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

LARRY WARREN
230853
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

All ECF-registered attorneys of record via email